Nov. 1801.      COURT OF APPEALS, NOV. TERM, 1801.

Worley
vs.
Walling.

WORLEY, *et ux. vs.* WALLING, *et al.*

The court of chancery will compel the performance of a parol agreement, admitted by the parties to have been made or clearly proved to have been made and partly carried into effect But it will not compel a conveyance where a parent long before the marriage of a child, promised if the child was dutiful, and married with the parent's consent, that upon such marriage he would convey a tract of land to the child, unless such promise was renewed anterior to such marriage, even though after such marriage the child was put in possession of a part of the land, and erected some improvements thereon.

APPEAL from a decree of the court of chancery, *dismissing* the bill of complaint. The bill states, that the defendant, *Walling*, had several daughters, all of whom, except *Ann*, one of the complainants, had greatly disobliged him, in consequence of their intermarrying with persons whom he disapproved of. That he promised the said *Ann*, after the death of her mother, that if she would continue to reside with him, and behave with the prudence and propriety she had hitherto observed, and would conduct and manage his domestic concerns, and would never marry contrary to his inclinations, he would give and secure to her a tract of land, whereof he was then seised, in fee, lying, &c. called *Old Fox Deceived*, containing 169 acres. That the said *Walling*, after the said promise, frequently and publicly declared to divers persons, such intention. That in conformity to the wishes of her father, the said *Ann* did reside with him, and superintend his domestic concerns for several years. That she was addressed by *Worley*, the other complainant; and with the full and entire approbation of her father, she intermarried with *Worley*. That in pursuance of his said promise *Walling* put the complainants in possession of the said tract of land. That they have made extensive improvements, &c. that *Walling* has since sold parts of the said land to the other defendants, who claim possession, &c. and that *Walling* hath also brought an action of ejectment for the residue, &c. *Prayer* for a conveyance in fee, &c. and for an injunction, &c.

The *answer* of *Walling* states, that three respectable persons were addressing his said daughter *Ann*, and he admits, that during that time he made a promise, that if she would marry either of them, he would secure to her the said land, but that she refused to marry either of them, and intermarried with *Worley*, contrary to his wish or consent; and he de-

nies any other promise. That in order that the complainants might do something for themselves, he put them in possession of the land, as tenants at will, without paying rent. That they have resided thereon about ten years, and have made some small improvements to the amount of one fourth of what the said land would rent for, during that period. Denies that he ever gave any assurance that he intended the said land for his daughter, other than is before stated, so as to induce the complainants to make the improvements.

The *answers* of the other defendants deny any notice of the claim set up by the complainants, &c.

*Testimony* was taken under commissions, and the cause was argued, &c.

HANSON, Chancellor, (May term, 1798.) The statute of frauds and perjuries he has ever considered as a most wise and salutary law, its object being to produce certainty in agreements, and to take care that men, on false suggestions, should not be compelled to perform things which they never stipulated to perform. The zeal indeed of the legislature to prevent in future the impositions which had before been practised, has been thought to have carried them too far. Hence it was, that although the law expressly declared that certain agreements, unless reduced to writing, should be void, the court of chancery has nevertheless compelled the performance of agreements, admitted by the parties to have been made, or clearly proved to have been made, and partly carried into effect. But in the present case, the alleged agreement between the parties, or rather the promise on a condition which has been performed, has not been proved. Perhaps it might be said, that there can be no agreement, unless both parties at the time of making it are equally bound. If one man says to another, "do this, and I will do that," is that other to have any indefinite time to determine on the proposition; and if, after years, he shall determine to do *this*, is he to have it in his power to bind the proposer without any fur-

Nov. 1801.

Worley
vs
Walling

ther conference on the subject? No! he is to come to the proposer and say, "You once made such a proposal; if you are still willing to abide by it, say so, and I will perform what you proposed." Did *Worley*, or his wife, act in this way? No! Is there any satisfactory proof of the father's consenting to the match, and telling the couple "they should have the land in case they joined the marriage?" No. Much stress has been laid on *Walling's* putting the couple in possession after their marriage, as if this could not be done, unless in pursuance of a former engagement to make the daughter a tenant in fee simple. But since the time of passing the acts relative to deeds, no inference is to be drawn from the *merely* suffering a man to take possession of land, except that he is to be a tenant at will. *Decreed*, that the bill be *dismissed* without costs. From which decree the complainants appealed to this court.

*Mason* and *Shaaff*, for the Appellants.

*Key*, for the Appellees.

THE COURT OF APPEALS at this term *affirmed* the decree of the Court of Chancery.